UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THOMAS GREGORY SHEA,<br><br>                            Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security,<br><br>                            Defendant. | Case No. 3:21-cv-00518-CLB<br><br>**ORDER DENYING MOTION TO REMAND, GRANTING CROSS-MOTION TO AFFIRM, AND DENYING MISCELLANEOUS MOTIONS**<br><br>[ECF Nos. 21, 23, 24, 26, 29] |

      This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Thomas Shea's ("Shea") application for supplemental security income pursuant to Title XVI of the Social Security Act. Multiple motions are currently pending before the Court. First, on May 9, 2022, Shea filed a motion for reversal, (ECF No. 21), to which the Commissioner responded, (ECF No. 22). On June 10, 2022, Shea filed a second motion for reversal and remand, (ECF No. 23), to which the Commissioner filed a response and countermotion to affirm (ECF Nos. 24, 25).[2] On September 19, 2022, Shea filed a motion for order granting his claim, (ECF No. 26), to which the Commissioner responded, (ECF No. 28). Finally, on October 17, 2022, Shea filed a motion for extension of time to file a response, (ECF No. 29), and no response was filed.

      Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 19), the Court concludes that the Commissioner's finding that Shea could perform other work that exists in significant numbers in the national economy was

---

[1]    Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]    ECF Nos. 24 and 25 are identical documents.

supported by substantial evidence. Therefore, the Court denies Shea's motion for remand, (ECF No. 23), and grants the Commissioner's cross-motion to affirm, (ECF No. 24). Shea's other motions, (ECF Nos. 21, 26, 29), are denied for the reasons explained below.

## I.    MISCELLANEOUS MOTIONS

Shea's first motion for reversal of the Commissioner's final decision asserts that because he was not presented with a legible Administrative Record ("AR"), the Court must grant his motion. (ECF No. 21.) ECF No. 18 is proof of service of the AR to Shea in the form of a password protected CD. There apparently was confusion over the availability of the password to access the CD; however, the Commissioner's response included the declaration of Danielle Bleeker, Paralegal Specialist with the United States Attorney's Office for the District of Nevada, who affirmed that Shea did indeed have the password. (ECF No. 22-1.) Bleeker's declaration also included a screenshot of an instant message conversation between Shea and herself, wherein Shea states he has the password in his possession. (*Id.* at Exh. A.) The motion, (ECF No. 21), is denied, because Shea was properly presented with the AR.

After filing a second motion for reversal and remand, Shea filed a motion requesting that his claim be granted. (ECF No. 26.) Shea makes similar arguments to those made in his second motion for reversal and remand but adds that the Court has taken too long to evaluate his motion. (*Id.* at 5.) As the Commissioner points out in his response, briefing in this case has been completed and Shea is not entitled to another filing. (ECF No. 28.) Additionally, because the Court is addressing his operative motion for reversal and remand through this order, the motion, (ECF No. 26), is denied as moot.

Finally, Shea filed a motion requesting "an emergency hardship extension". (ECF No. 29.) Shea argues that due to his status as a *pro se* litigant, he is entitled to leniency from the Court. (*Id.* at 1.) It is unclear from the filing to what motion, exactly, he would like additionally time to respond. To the extent that he is requesting an extension of time to file a response to the Commissioner's countermotion, (ECF No. 25), the time to do so has passed. The deadline to respond to the Commissioner's countermotion was July 13, 2022.

(ECF No. 24.) Instead of filing a response, Shea filed his motion for order granting his claim on September 19, 2022. (ECF No. 26.) The emergency hardship motion, (ECF No. 29), was filed on October 17, 2022, more than 90 days after the deadline to file a response. Because it is unclear what the exact relief requested from the motion is, the motion, (ECF No. 29), is denied.

The Court will now address Shea's motion for reversal and remand, (ECF No. 23), and the Commissioner's cross-motion to affirm, (ECF No. 24).

## II.   STANDARDS OF REVIEW

### A.   Judicial Standard of Review

This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d

683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the AR as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**B.    Standards Applicable to Disability Evaluation Process**

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-

by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood*

*v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

### III.     CASE BACKGROUND

#### A.     Procedural History

Shea applied for supplemental security income ("SSI") on October 5, 2015, with an alleged disability onset date of September 1, 2011. (AR 13, 88-89, 219-25.) Shea's application was denied initially on January 21, 2016, and upon reconsideration on August 25, 2016. (AR 106-19, 113-15.) Shea subsequently requested an administrative hearing and on February 27, 2017, Shea appeared unrepresented at a telephonic hearing before an ALJ. (AR 32-57.) A vocational expert ("VE") also appeared at the hearing via telephone. (*Id.*) The ALJ issued a written decision on March 14, 2017, finding that Shea was not disabled because he could perform other work that exists in significant numbers in the national economy. (AR 627-645.) Shea appealed, and the Appeals Council denied review. (AR 646-650.) Shea then filed a motion for reversal and remand with the U.S. District Court of Nevada, which was granted. (AR 656-69.) Following the remand, Shea requested an administrative hearing and on April 18, 2022, Shea appeared with counsel at a telephonic hearing before an ALJ. (AR 134-61.) A VE also appeared via telephone. (*Id.*) The ALJ again found that Shea was not disabled because he could perform other work that exists in significant numbers in the national economy (AR 578-588.) Shea appealed, and the Appeals Council denied review. (AR 557.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Shea filed a complaint for judicial review on July 1, 2021. (*See* ECF No. 4.)

#### B.     ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 578-88.) Ultimately, the ALJ disagreed that Shea has been disabled from September 1, 2011, the alleged onset date, through the date of his decision. (AR 588.) The ALJ held that, based on Shea's RFC, age, education, and work experience, Shea could perform other work that exists in significant numbers in the national economy. (AR 587-88.)

In making this determination, the ALJ started at step one. Here, the ALJ found Shea had not engaged in substantial gainful activity since the application date of October 5, 2015. (AR 580.) At step two, the ALJ found Shea had the following severe impairments: loss of visual efficiency in the right eye, loss of central vision acuity in the right eye, contraction of visual field in the right eye, anxiety, depression, schizophrenia, psychotic disorder, and obsessive-compulsive disorder. (AR 581.) At step three, the ALJ found Shea did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (*Id.*)

Next, the ALJ determined Shea has the RFC to perform medium work as defined by 20 C.F.R. § 416.967(c) except:

> he could stand and walk 6-8 hours in an 8-hour workday. He could frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. He must avoid concentrated exposure to dangerous machinery and unprotected heights. He could understand, remember and carry out simple and routine tasks and instructions and he could occasionally interact with supervisors, coworkers and the general public. He is unable to perform work requiring binocular vision or perform jobs that require good depth perception. He must avoid fast-paced production work, such as working on an assembly line. He could not perform commercial driving.

(AR 582.)

The ALJ found Shea's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Shea's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 583-84.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Shea's credibility. (AR 582-86.) The ALJ then determined that Shea is not capable of performing past relevant work, as a carpenter, as actually or generally performed. (AR 586.)

Relying on the testimony of the VE, the ALJ determined that Shea's age, education, work experience, and RFC would allow him to perform other occupations existing in

8

significant numbers in the national economy, such as: kitchen helper, janitor, or linen room attendant. (AR 586-88.) Accordingly, the ALJ held that Shea had not been under a disability since the application date, October 5, 2015, through the date of the decision, and denied Shea's claim. (AR 588.)

## IV. ISSUES

Shea raises the following issues for this Court's review:

(1) Whether the AR is false and misleading;

(2) Whether the ALJ's decision is based on substantial evidence and without bias; and

(3) Whether the ALJ properly evaluated the hypothetical questions asked of the VE. (ECF No. 23 at 2-6.)

These issues will be addressed in turn.

## V. DISCUSSION

### A. Neither the AR Nor the ALJ's Decision are False and Misleading.

Shea alleges that the AR is false and misleading therefore rendering the ALJ's decision false and misleading. Shea specifically alleges the medical statements in the Disability Determination Explanation ("DDE") from October 5, 2015, are false and misleading because Dr. Pereyra misstated problems with Shea's vision. (ECF No. 23 at 3.) The DDE was performed by Dr. Pereyra, a psychologist, who was performing a psychological evaluation on Shea. (ECF No. 24 at 16-17, citing AR 83-84.) Shea's physical evaluation in the DDE was performed by Dr. Nickles and Shea does not allege deficiencies as to Dr. Nickles' evaluation. (AR 84-86, *see* ECF No. 23.)  To the extent Dr. Pereyra misstates Shea's visual impairments, there is no reversible error as Dr. Pereyra did not evaluate Shea's physical health. (AR 83-84.)

Shea also argues that because Dr. Durant found Shea had a risk of sympathetic ophthalmia in 2003, all subsequent doctors who evaluated Shea overlooked his vision issues. (ECF No. 23 at 3, citing AR 388.) However, Dr. Durant only found that Shea had a *risk* of this condition, not that he was guaranteed to have sympathetic ophthalmia. (AR

388.) Being at risk for developing a condition does *not* mean that one will inevitably develop the condition.

Shea also takes issue with the evaluation of Tyson Kales, O.D., who found Shea "demonstrated full range of motion at distance and near with left eye" in 2012, but in 2016 Kales found Shea's vision declined to 20/30 DVA and NVA. (ECF No. 23 at 3, citing AR 418, 444.) Shea argues that this shows his vision decreased over time. (*Id.*) However, both evaluations found Shea's best corrective acuities were 20/20 DVA and NVA. (AR 419, 445.) To the extent Shea asserts that the medical records misstate his visual capabilities, he has not pointed to any evidence that proves this to be the case. An error is harmless if the record contains substantial evidence that supports the ALJ's decision. *Batson*, 359 F.3d at 1197 (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir.1990) (applying the harmless error standard); *Booz v. Sec'y of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir.1984) (same). Because all the alleged defects in the AR amount to, <u>at most</u>, a non-reversible error, the ALJ's decision properly relied on the medical evidence in the AR.

**B.     The ALJ's Decision is Supported by Substantial Evidence.**

Shea next argues the ALJ's decision is not supported by substantial evidence because the ALJ improperly relied on the flawed AR and improperly discounted his mental impairments. (ECF No. 23 at 5-6.) First, the ALJ could properly rely on the medical statements in the AR because there are no reversible errors in the AR. *Batson*, 359 F.3d at 1197.

Second, Shea specifically alleges the ALJ's decision that Shea's mental impairments, considered singly and in combination, do not meet or medically equal the relevant criteria of listings was not supported by substantial evidence. (ECF No. 23 at 4-5). Shea also describes elements of the AR that support his contention that he is disabled. (*Id.*) The issue for this Court to decide is whether there is substantial evidence to support the ALJ's decision, not Shea's allegations. *Stout*, 454 F.3d at 1052. Even if the evidence would support more than one rational interpretation, the Court must defer to the ALJ's

rational interpretation. *Bayliss*, 427 F.3d at 1214 n.1; *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ"). Therefore, the Court will only evaluate whether there is substantial evidence in the AR to support the ALJ's decision as to Shea's mental impairments.

Shea's primary argument is that his LOCUS (Level of Care Utilization System) score of 26, with a level of severe in multiple categories, proves that he meets the listing requirements for a mental impairment. (ECF No. 23 at 4, citing AR 938-40.) The Commissioner argues the LOCUS score is not dispositive of whether a claimant meets a listing for a mental impairment. (ECF No. 24 at 19.) "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, (1990) (emphasis in original) (footnote omitted). Because Shea does not meet the level of severe in all categories, the listing requirements are not met.

Shea's motion for remand also includes language referring to how mental health diagnoses he received in the past shows he meets the mental impairment listing criteria. (ECF No. 23 at 5.) However, mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability. *Young v. Sullivan*, 911 F.2d 180, 181, 183–85 (9th Cir. 1990). The Commissioner points out that Shea holds the burden of proving that he has an impairment that satisfies the listing criteria. (ECF No. 24 at 20, citing *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).) Additionally, the Commissioner argues Shea does not explain why these diagnoses are not properly accounted for in his RFC, which limit him to simple and routine tasks and only occasional interactions with others. (*Id.* at 22.) When requesting reconsideration of the ALJ's decision, Shea must articulate specifically why the medical evidence does not provide substantial evidence for the ALJ's decision. *See Moore v. Kijakazi*, No. 2:20-cv-01988-BNW, 2022 WL 716811, at *6 (D. Nev. Mar. 10, 2022) ("it is not sufficient for Plaintiff to merely . . . summarize some medical evidence without

providing any explanation regarding how this . . . medical evidence shows that substantial evidence does not support the ALJ's RFC finding"); *Champagne v. Colvin*, 582 Fed.Appx. 696, 697 (9th Cir. 2014) (unpublished) (claimant "identified no additional medically necessary limitation that should have been included in the [RFC]") (citing *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (burden of showing harmful error falls upon the party attacking the agency's determination)). Without an explanation of why Shea's mental health diagnoses rise to the level of any listing criteria, the Court must defer to the ALJ's rational interpretation of the AR. *Bayliss*, 427 F.3d at 1214 n.1; *Batson*, 359 F.3d at 1196. Because the ALJ gave Shea the benefit of the doubt in evaluating his mental disabilities, despite how Shea's allegations of mental impairments changed between oral hearings and Shea's testimony as to the variety of activities in which he can participate, the ALJ's decision is a rational interpretation of the AR and is thus supported by substantial evidence. (AR 585, 582, citing AR 228-35, 255-262.)

### C. The ALJ Properly Evaluated Hypothetical Questions Asked of the VE.

Finally, Shea argues that the ALJ improperly disregarded hypothetical questions asked of the VE. (ECF No. 23 at 5, citing AR 622-24.) The specific question Shea refers to is one posed by the ALJ that added the limitations of being off task 15% of the workday and missing more than two days of work per month to the original hypothetical. (AR 622-23.) The VE answered that the added limitations would eliminate basically all work, at any exertional level. (*Id.*) The hypothetical question that is dispositive is the one that matches the RFC finding. *See Bayliss*, 427 F.3d at 1218 ((ALJ properly relied on VE testimony where "[t]he hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record"); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("the ALJ did not err in omitting the other limitations that [claimant] had claimed, but had failed to prove"). Because the ALJ did not include the limitations of being off task 15% of the workday and missing more than two days of work per month to Shea's RFC, the ALJ properly relied on the first hypothetical question.

## VI.     CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision was supported by substantial evidence and is free of legal error.

Accordingly, **IT IS ORDERED** that Shea's motion to remand (ECF No. 23) is **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 24) is **GRANTED**;

**IT IS FURTHER ORDERED** that the miscellaneous motions, (ECF Nos. 21, 26, 29), are **DENIED**; and

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** accordingly and **CLOSE THIS CASE**.

**DATED**: this 3rd day of November, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**